# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET BAKER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-00917 |
| | § | |
| ERIC H. HOLDER, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Eric H. Holder's ("Holder")[1] motion to dismiss and for summary judgment. Dkt. 15. Pursuant to Rule 12(b)(1), Holder moves to dismiss any of Baker's claims not accepted for investigation and exhausted administratively. Dkt. 15 at 1. Holder also moves for summary judgment under Rule 56(c) on plaintiff's discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id.* Upon consideration of the relevant briefing, the summary-judgment record, and applicable law, Holder's motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff Margaret Baker ("Baker") sued Holder in his official capacity as the Attorney General of the United States. Dkt. 1 at 1. Baker is a secretary at the Federal Detention Center ("FDC") facility in Houston, Texas, which is operated by the Bureau of Prisons ("BOP") within the Department of Justice. As Attorney General, Holder is the DOJ's head and highest-ranking official. Act to Establish the Department of Justice, ch. 150, 16 Stat. 162, 162 (1870) (establishing the Department of Justice within the Executive Branch, with the Attorney General as head of the department); Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 92–93 (creating the office of Attorney General of the United States, whose duties include giving "advice and opinion upon questions of law when required by the President of the United States").

# I. BACKGROUND

### A. Factual Background

Baker has been a BOP employee since 1992. Dkt. 1 (Pl.'s Orig. Cmplt.) at 3. On June 12, 2006, she began working at the FDC as the Warden's Secretary at the GS-8 pay level. *Id.* The warden at her arrival was Darlene Veltry, and Baker's first-line supervisor was Veltry's Executive Assistant, Dr. Maria Douglas. *Id.* Baker is an African-American female, and she was over the age of 40 at the time she started working for the FDC. *Id.*

According to Baker, she was subject to discrimination and harassment from the day of her arrival at the FDC.[2] *Id.* She claims that she was treated differently from her Caucasian predecessor in the position, Ann Ford. Dkt. 21, Ex. 7 (Sworn Statement of Margaret Baker) at 7–9. Baker contends that she was not allowed to eat at her desk or have a radio, and she was harshly scrutinized for everything that she did, unlike Ms. Ford. *Id.* She also faced questions from her supervisor about requested leave and using a government-issued credit card. *Id.* Baker further claims that she was not provided with appropriate and timely training to perform her job duties, and she was subjected to racial comments and required to clean out a closet containing Veltry and Douglas's personal property. Dkt. 15, Ex. B at 2; Dkt. 21, Ex. 8 (Sworn Statement of Renita Columbus) at 6–7. As the alleged discrimination grew worse, Baker received negative progress notes in her employment file regarding her handling of administrative files and audit records. Dkt. 21, Ex. 7 at 10–11.

On October 15, 2006, Alfonso Haynes became the FDC's warden, replacing Veltry. Dkt. 1 at 3. Haynes thus became Baker's second-line supervisor, and Douglas remained as her first-line

---

[2] Indeed, Baker initiated claims of race discrimination on her first day of work, June 12, 2006. These early issues were putatively resolved by an informal resolution agreement on July 25, 2006. Dkt. 15, Ex. B (Cmplt. of Discrimination) at 2.

supervisor. *Id.* Shortly after Haynes's arrival, Baker contacted an EEO counselor on November 13, 2006 and filed a formal complaint of discrimination on December 13, 2006. Dkt. 1 at 5; Dkt. 15, Ex. B at 1. Baker complained of the aforementioned issues plus other workplace concerns, alleging retaliation for prior EEO activity and discrimination on the basis of race and age, and she requested removal of negative file information and a negative file entry to be placed in Douglas's employment file. Dkt. 15, Ex. B at 2–4. She also asked for diversity training for the workplace. *Id.*

In mid-December 2006, after Douglas and Haynes had become aware of Baker's EEO complaint, Douglas issued performance log ratings for Baker that ranged from minimally satisfactory to satisfactory. Dkt. 21, Ex. 13 (Perf. Log (Oct.-Dec. 2006)). According to the log, Douglas discussed the performance ratings with Baker on December 15, 2006, but Baker refused to sign the document. *Id.* at 2. Baker requested that the EEO Officer overseeing her complaint, Mina Raskin, amend the complaint to include a reference to the performance log entries, which Baker alleged were acts of retaliation for her EEO activity. Dkt. 15, Ex. C (Letters from Baker to M. Raskin) at 1–3.

On December 24, 2006, Douglas left the FDC, and the FDC abolished the position of Executive Assistant. Dkt. 15 at 2. Warden Haynes became Baker's first-line supervisor on December 25, 2006. *Id.* On April 11, 2007, Baker wrote another letter to Raskin seeking leave to amend her EEO complaint, alleging that Haynes had imposed new directives and additional responsibilities on her, and that Haynes spoke to one of Baker's coworkers about his disappointment with her performance. Dkt. 15, Ex. C at 4–5. On April 13, 2007, Baker wrote another request letter to Raskin, claiming that Haynes retaliated against her by allow other staff members to assume supervisory responsibilities and take over jobs allegedly within her purview. *Id.* at 6.

3

On April 23, 2007, as part of the review process, Baker received a "Fully Successful" overall performance rating.  Dkt. 21, Ex. 14 (Emp. Perf. Appraisal) at 1 ¶ E.  In May 2007, one of Baker's co-workers, Chequita Wilson, threatened her, and an assessment team was formed to assess the level of threat posed after the verbal altercation.  Dkt. 15, Ex. H (Sworn Statement of Alfonso Haynes) at 8–9.  The assessment team determined that the incident did not meet the criteria for workplace violence and thus did not merit further action.  *Id.* at 9.

During the week of May 14, 2007, Dr. David Freeman, the FDC's Chief Psychologist, alleged in a memo to Warden Haynes that Baker told him that he should file a discrimination complaint for receiving a less than "Outstanding" performance rating.  Dkt. 15, Ex. O (Memo from Dr. David Freeman to Haynes, May 25, 2007) at 1.   On June 1, 2007, after receiving this memorandum, Haynes reassigned Baker to the position of Unit Secretary, retaining the same pay and grade (GS-8) and same hours of work.  Dkt. 15, Ex. H at 14; Dkt. 15, Ex. C (Reassignment Letter, June 1, 2007) at 8.

According to Haynes's prior testimony in the administrative proceedings, he laterally reassigned Baker due to overall issues with her performance and because she violated the confidentiality of her office by encouraging Dr. Freeman to file a discrimination complaint after his performance evaluation.  Dkt. 15, Ex. H at 14–15; Dkt. 38, Ex. 3 (EEOC Hr'g Tr., Nov. 19, 2009) at 999–1001.   Baker wrote five additional letters to Raskin, from June through October 2007, seeking to amend her complaint and add retaliation claims for her reassignment and substandard working conditions.  Dkt. 15, Ex. C at 7-13.

### B. Procedural Background

The BOP accepted Baker's retaliation and race and age discrimination claims for investigation on August 7, 2007. Dkt. 15, Ex. D (EEO Letter to Baker). The appointed EEO investigator then took sworn testimony regarding Baker's claims from several witnesses. Dkt. 15 at 5. On October 28 and November 18–19, 2009, a hearing was held before an EEOC Administrative Law Judge (ALJ), Claudine James. *Id.* Judge James heard testimony on Baker's issues of race and age discrimination, harassment, and retaliation. Dkt. 15, Ex. J (Hr'g Order, Oct. 14, 2009). On June 28, 2010, Judge James issued her opinion and found no retaliation or intentional age or race discrimination. Dkt. 15, Ex. K (ALJ Decision) at 20.

The DOJ issued a final order on August 26, 2010, accepting the ALJ's decision that there had been no retaliation or discrimination against Baker. Dkt. 15, Ex. M (DOJ Final Order) at 4–7. On September 16, 2010, Baker appealed to the EEOC Office of Federal Operations (OFO). Dkt. 15, Ex. N (OFO Decision). On March 10, 2011, the OFO affirmed the finding of no discrimination. *Id.*

Baker appealed the administrative decisions by filing a civil action in this court. Dkt. 1. After the discovery period concluded, defendant moved to dismiss and for summary judgment. Dkt. 15. Both sides filed responsive briefing, and the motion is now ripe for decision.

## II. THE MOTION TO DISMISS

### A. Legal Standard

All federal employees, including Baker, must exhaust available administrative remedies before filing a civil discrimination suit in federal court. *See Yee v. Baldwin-Price*, 325 F. App'x 375, 378 (5th Cir. 2009). The employee must first "initiate contact with [an EEO] Counselor [in the appropriate agency] within 45 days of the date of the matter alleged to be discriminatory . . . ." *Id.*

5

(quoting 29 C.F.R. § 1614.105(a)(1)).  Failure to notify the EEO counselor timely may bar the employee's discrimination claims from proceeding in a judicial forum.  *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) ("As a precondition to seeking this judicial relief, . . . complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency.").  The exhaustion requirement provides agencies with an opportunity to resolve discrimination claims informally before they proceed to court.  *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 851 (S.D. Tex. 2010).

### B. *Application of Law to Facts*

Holder moves for dismissal of "any claims not accepted for investigation and exhausted administratively."  Dkt. 15 at 1.  However, the court is unable to discern which particular claims in Baker's complaint Holder argues have not been exhausted.  Because the court cannot dismiss claims that have not been identified, Holder's motion to dismiss is **DENIED**.

### III.  THE MOTION FOR SUMMARY JUDGMENT

### A. *Legal Standard*

Holder also moves for summary judgment on Baker's Title VII and ADEA claims.  *Id.* Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact.  *Id.* at 322.  A dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law determines the facts which are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *See Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Holder moves for summary judgment on Baker's claims of intentional discrimination, harassment, and retaliation under Title VII and the ADEA. The court considers each set of claims under both antidiscrimination statutes.

### B.      *The Title VII Claims*

### 1.      <u>Intentional Race Discrimination</u>

In order to proceed to trial in a case of employment discrimination with circumstantial evidence, the court engages in the familiar *McDonnell Douglas* three-step analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973). First, a plaintiff must show a genuine dispute of material fact as to all four elements of a *prima facie* case of discrimination. *Willis v. Coca-Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). To establish a *prima facie* case, the plaintiff must show (1) she is a member of a protected class; (2) she was qualified for his position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably or that the plaintiff was replaced by someone outside of her protected class. *Id.*; *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff makes this

showing, the burden of production shifts to the defendant-employer to identify a legitimate, non-discriminatory reason for the adverse employment action.  *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003).  Finally, the plaintiff, who bears the ultimate burden of persuasion at all times to prove discrimination, must raise a genuine dispute of material fact that the proferred non-discriminatory reason is pretextual.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097 (2000); *Willis*, 445 F.3d at 420.

Throughout the course of briefing, defendant raised various challenges to each element of Baker's *prima facie* case, but the crux of the parties' dispute on the Title VII race discrimination claim centers around the third requirement, *i.e.*, whether Baker suffered an adverse employment action.  An adverse employment action for Title VII discrimination claims "include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)); *Arrieta v. Yellow Transp., Inc.*, No. 3:05-cv-2271, 2008 WL 5220569, at *5 (N.D. Tex. Dec. 12, 2008) (holding that "disciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions").  In other words, an actionable adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 118 S. Ct. 2257 (1998).

Here, Baker has alleged a litany of discriminatory acts, including unwarranted criticism, offhand comments, negative progress reviews, performance log entries, additional work, inadequate

training, and harsh supervision, none of which rises to the level of an ultimate adverse employment action. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) ("Title VII was only designed to address *ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.") (internal quotation marks omitted); *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

The only arguable adverse action supported by the record is Baker's involuntary transfer from the position of Warden's Secretary to Unit Secretary. Under Title VII, a transfer may or may not be the equivalent of a demotion and thus qualify as an adverse employment action. *Alvarado v. Tex. Rangers,* 492 F.3d 605, 613–15 (5th Cir. 2007). Even if a transfer does not "result in a decrease in pay, title, or grade, it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* at 613 (internal quotation marks omitted); *Hinson v. Clinch County, Ga. Bd. of Educ.,* 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves reduction in pay, prestige or responsibility."). Whether a transfer to a new position is a functional demotion is an objective inquiry. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004).

In response to Holder's motion for summary judgment, Baker presented evidence that creates a genuine dispute of material fact that Haynes's transfer decision was an adverse employment action because the position of Unit Secretary, with fewer responsibilities than the position of Warden's Secretary, was at least arguably viewed as a demotion by other employees at the FDC. Dkt. 21, Ex. 8 (Columbus Statement) at 18 ("So, even though she [Baker] may be getting the same pay, [it] still remains that everybody in the building knows that's just not how it goes and that's a backwards

move.").  The burden now shifts to Holder to articulate a legitimate non-discriminatory reason for the transfer.  Holder has done so by pointing to Haynes's testimony that he transferred Baker due to his loss of confidence in her abilities and her breach of confidentiality regarding employment evaluations.  Dkt. 15, Ex. H at 14–15; Dkt. 38, Ex. 3 at 999–1001.

Baker has the ultimate burden of persuasion to prove that the agency's articulated reason for its action was not its true reason, but a sham or pretext for unlawful discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 121 S. Ct. 2093 (2000).  Baker claims that Haynes's multiple and allegedly conflicting reasons for the transfer suffice to raise a fact dispute on the issue of pretext.  Dkt. 21 at 20–23.  The court disagrees.

In this circuit, "an employer's incorrect belief in the underlying facts—or an improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination."  *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 & n.19 (5th Cir. Jan. 31, 2008) (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).  Title VII does not prohibit decisions made on the basis of an error; rather, the law prohibits decisions made on the basis of discrimination. *Little v. Republic Ref'g Co.*, 924 F.2d 93, 97 (5th Cir. 1991).  Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988).  Baker's cited inconsistencies in the summary-judgment record regarding the decision-making process at best tend to show that Haynes was mistaken about certain facts before the transfer occurred.  Thus, Baker's purported evidence of racial discrimination does not raise a fact dispute on the issue of pretext, and her claim of intentional race discrimination fails.

2.     **Racial Harassment**

A plaintiff's *prima facie* case of racial harassment alleging hostile work environment consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999). For harassment to affect a "term, condition, or privilege of employment" it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts*, 170 F.3d at 509. The conduct must be more than rude or offensive comments and must rise beyond isolated incidents. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).

All of Baker's cited instances of harassment fall within the category of petty slights and irritants, and to the extent that any of them were based on her race, they were isolated instances and not part of a "severe or pervasive" pattern of conduct on the part of Baker's coworkers or supervisors. Baker has failed to present sufficient evidence of racial harassment to raise a fact issue on her *prima facie* case, and her claim of racial harassment may not proceed to trial.

3.     **Retaliation**

To establish a *prima facie* case of retaliation, Baker must show that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57. Assuming the plaintiff establishes her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory purpose for the employment

11

action.  *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  If the defendant meets this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose.  *Id.*

For purposes of retaliation claims, an adverse employment action is one that, in context, "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *McCoy*, 492 F.3d at 559 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006)).  "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."  *Burlington N.*, 548 U.S. at 68.

Here, other than the transfer, none of the alleged adverse actions raises a fact dispute regarding possible hindrances to a reasonable worker's claims of discrimination.  Rather, these actions fall within the category of petty slights and annoyances that "the Supreme Court has recognized are not actionable retaliatory conduct."  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008).  And as to the transfer, assuming that Baker has created a fact dispute for her *prima facie* case, she has not presented sufficient evidence to create a fact dispute that Haynes's proffered reasons for her transfer, her alleged breach of confidentiality and her performance issues, were pretext for a retaliatory motive.  Accordingly, her retaliation claim fails.

### C.    The ADEA Claims

Holder also moves for summary judgment on Baker's claims of age discrimination and harassment under the ADEA.  An employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004); .  The Fifth Circuit also recognizes claims of hostile work environment on the basis of age.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th

Cir. 2011) (recognizing age harassment claims under the ADEA).  However, because Baker has not presented sufficient summary-judgment evidence to create a fact dispute on the issue of pretext or severe or pervasive harassing conduct, her claims of intentional age discrimination and harassment may not proceed beyond the summary-judgment stage.

## IV.   Conclusion

After reviewing the arguments of the parties, the summary-judgment record, and the applicable law, Holder's motion (Dkt. 15) is **GRANTED IN PART** and **DENIED IN PART**. Holder's motion to dismiss for failure to exhaust is **DENIED,** and Holder's motion for summary judgment is **GRANTED**.  Baker's claims against Holder are **DISMISSED WITH PREJUDICE**. The court will enter a separate final judgment consistent with this opinion.

It is so **ORDERED**.

Signed at Houston, Texas on March 22, 2013.

_____
Gray H. Miller
United States District Judge